[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 13, 2007
THOMAS K. KAHN
CLERK

No. 06-15353
Non-Argument Calendar

_____

BIA Nos. A78-612-400 & A78-612-401

HUGO FERNANDO BECERRA-YATE,
MARIA FERNANDA GONZALEZ-ESCOBAR,
STEPHANY JOHANNA BECERRA-GONZALEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 13, 2007)**

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Petitioners are natives and citizens of Colombia, S.A. The lead Petitioner, Hugo Fernando Becerra-Yate ("Yate"), first entered the United States in June 1998, as a visitor. Following this visit, he returned to the United States on several occasions, the latest being on November 23, 2000, on a B1 visa as a visitor for business with authorization to December 22, 2000. His wife and daughter, Petitioners Maria Fernanda Gonzalez-Escobar and Stephany Johanna Becerra-Gonzalez, arrived here on October 24, 2000, as nonimmigrant B2 visitors.

On December 15, 2000, Yate filed an application for asylum on behalf of himself and his wife and daughter, in which he alleged that he feared persecution by the Revolutionary Armed Forces of Colombia ("FARC") on account of his political opinion and membership in a particular social group. An asylum officer denied the application. The case then proceeded to a removal hearing before an Immigration Judge ("IJ") on a Notice to Appear, which charged Petitioners with removability for remaining in the United States for a time longer than permitted by law.

At the removal hearing, which was held on September 22, 2004, Petitioners, through counsel, admitted the allegations of the Notice to Appear and conceded removability as charged. The IJ heard and considered the merits of their asylum application on April 14, 2005.

Yate was the only witness who testified in support of the application.

2

Testifying through an interpreter, he said that the Revolutionary Armed Forces of Colombia ("FARC") had targeted him based on his activities in the Social Conservative Party and as a "collaborator" to assist the poor. Some men, who identified themselves as members of the FARC, seized him at gun point and took him to a camp, where he was accused of being a collaborator with the military and the police, and threatened with death if he continued his activities. After they released him, he began receiving threatening phone calls from a man, who stated that he had not heeded "the warnings" to stop working with the local youth. Yate said that he fled to the United States in fear, but returned three months later, hoping that the situation had improved. In March 1999, he received a pamphlet that threatened him with death. Other pamphlets declared him a "military target." Yate left for the United States for a second time in April 1999, after an armed man had made inquiry about him, but returned to Colombia in October. Upon his return, he continued his community work with the local youth, but in January 2000, he noticed that he was being followed and that people were asking questions about him. His wife and mother-in-law were questioned by two armed men who broke into the family home, looking for him. So, he left once again for the United States. He returned to Colombia briefly in August 2000, due to his wife's illness.

The IJ credited Yate's testimony, but concluded that he had failed to demonstrate past persecution, a well-founded fear of future persecution, or the

basis for withholding of removal under the Immigration and Nationality Act ("INA"), or relief under the U.N. Convention Against Torture ("CAT"). The IJ therefore denied Petitioners' application and ordered their removal.

Petitioners appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which affirmed. They now petition this court for review.

We "review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion." Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) "A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test." Id. We must affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283-84. "To the extent that the IJ's and the BIA's decisions are based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). "Findings of fact made by the Immigration Judge may be reversed by this Court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (internal citations and quotations omitted).

> [A]sylum relief requires proof of two criteria. To establish asylum based on past persecution, the applicant must prove (1) that []he was persecuted, and (2) that the persecution was on account of a protected ground. To

establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a 'subjectively genuine and objectively reasonable' fear of persecution, that is (2) on account of a protected ground.

Id. (citations omitted). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation [.]" Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations and citation omitted). In Sepvuleda, we held that a restaurant bombing and menacing phone calls did not compel a reversal of the IJ's decision that the petitioner was not entitled to asylum. Id.

We also have upheld a BIA finding that a five-day detention, "during which [the petitioner] was not harmed does not compel the conclusion that he experienced past persecution." Zheng v. U.S. Atty. Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006), cert. denied, 127 S.Ct. 1124 (2007). As to establishing a well-founded fear of future persecution, an applicant has to show that his fear is both subjectively genuine and objectively reasonable. Sepulveda, 401 F.3d at 1231.

Yate's evidence that he was briefly detained and received menacing telephone calls and pamphlets, and that men from the FARC broke into his house and threatened his mother-in-law and wife, does not compel the conclusion that he suffered past persecution, or had a well-founded fear of future persecution. Accordingly, the BIA did not err in dismissing Petitioners' claim for asylum.

5

In relation to his entitlement to withholding of removal and CAT relief, Yate contends that the record shows that he would more likely than not be tortured upon a return to Colombia, as evidenced by his detention by the FARC at gunpoint, the constant telephone threats, the pamphlets that declared him a military target for his work, and the FARC's "terrorizing" of his mother-in-law and his wife in their home.

Withholding of removal may be granted if the alien establishes that, if returned to his country, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3). An alien is entitled to withholding of removal if he can establish, with specific and credible evidence: (1) a past threat to life or freedom through proof of past persecution on account of a protected ground; or (2) a future threat to life or freedom if it "is more likely than not" that the protected ground will cause future persecution. 8 C.F.R. § 208.16(b)(1), (2). If an alien does not establish past persecution, he bears the burden of showing a well-founded fear of future threat to life or freedom by showing that it is more likely than not that he will suffer persecution on the basis of the protected ground, and he could not avoid persecution by relocating to another part of his country, if, under all of the circumstances, it would be reasonable to expect him to do so. 8 C.F.R. § 208.16(b)(2). "'Where an applicant

6

is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of [removal].'" Silva, 448 F.3d at 1243.

As to CAT relief, "'[t]he burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Reyes-Sanchez v. U.S. Att'y. Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is an act that causes "severe pain or suffering." Id. In failing to meet "the less stringent standard for asylum," relief under CAT also necessarily fails. Zheng, 451 F.3d at 1292.

Because Yate could not establish entitlement to asylum, he likewise could not meet the higher burden required for withholding of removal or CAT relief.

Petitioner's final contention is that Yate suffered substantial prejudice from a mistranslation of his statements by the interpreter at his asylum hearing. He argues that the interpreter confused the Liberal and Conservative Parties, and he was not asked about what he wrote in his asylum application, that he was a member of the Conservative Party.

"Aliens are entitled to due process of law in deportation hearings. Due process is satisfied only by a full and fair hearing. . . To prevail, however, on a due process challenge to a deportation proceeding, an alien must show substantial

7

prejudice." Ibrahim v. U.S. I.N.S., 821 F.2d 1547, 1550 (11th Cir. 1987).  To show substantial prejudice, the alien must demonstrate that the outcome would have been different.  Id.

Petitioners suffered no substantial prejudice from the interpreter's mistranslation of which political party Yate belonged to, as the basis for the IJ's decision was not his party affiliation.

PETITION DENIED.