[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16106
Non-Argument Calendar

_____

BIA No. A78-411-350

DORA STELLA MEJIA-RESTREPO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 29, 2007)**

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner Dora Stella Mejia-Restrepo, a citizen of Colombia, petitions for review of the order by the Board of Immigration Appeals (BIA) affirming the Immigration judge's (IJ's) order of removal and denial of asylum under the Immigration and Nationality Act (INA) § 208, 8 U.S.C. § 1158, withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 C.F.R § 208.16(c).  In her petition, Mejia-Restrepo argues that the BIA's denial of asylum is not supported by substantial evidence and that the IJ denied her due process.  Because Mejia-Restrepo does not challenge the BIA's findings with regard to withholding of removal or protection under the CAT, any argument with regard to those findings has been abandoned.  *Djonda v. U.S. Att'y Gen.*, No. 06-11275, manuscript op. at 9 (11th Cir. July 24, 2007).

With regard to her claim for asylum, Mejia-Restrepo argues that she established that she had a well-founded fear of persecution on account of her imputed political opinion and membership in a particular social group, as a professional employed by a foreign company working in areas largely controlled by terrorists.  In addition, Mejia-Restrepo asserts that she proved that she had been persecuted in the past and was entitled to a presumption of future persecution, which the government had failed to rebut.

2

We review "administrative fact findings under the highly deferential substantial evidence test . . . . Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Djonda v. U.S. Att'y Gen.*, No. 06-11275, manuscript op. at 8-9 (11th Cir. July 24, 2007) (quotation omitted). When reviewing for substantial evidence, we do not "ask whether the evidence presented by an applicant might support a claim for relief; instead we ask whether the record compels us to reverse the finding to the contrary." *Id.*; 8 U.S.C. § 1252(b)(4)(B). When, as here, the BIA issues its own opinion without expressly adopting the IJ's decision, we review only the BIA's decision. *See Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). Because the BIA treated Mejia-Restrepo's testimony as credible, we must accept her testimony. *Niftaliev v. U.S. Att'y Gen.*, 487 F.3d 834, 839 (11th Cir. 2007).

An alien may receive asylum, at the discretion of the Attorney General, if she can carry the burden of proving that she is a "refugee," which is defined as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

3

INA § 101(6)(42)(A), 8 U.S.C. § 1101(a)(42)A); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). Accordingly, "the alien must, with credible evidence, establish (1) past persecution on account of her political opinion or any other protected ground, or (2) a 'well-founded fear' that her political opinion or any other protected ground will cause future persecution." *Id.* at 1230-31 (citing 8 C.F.R. § 208.13(a) and (b)). We have recognized that an alien's imputed political opinion may satisfy the requirement that persecution be based on a protected ground. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1289 (11th Cir. 2001). Although the INA does not provide a definition, we have defined "persecution" as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations and bracket omitted). "A showing of past persecution creates a presumption of a 'well-founded fear,' subject to rebuttal by the [government]." *Id.* Otherwise, an applicant must demonstrate that her fear of being singled out for future persecution on account of a protected ground is subjectively genuine and objectively reasonable. *Id.* Should the alien show a "well-founded fear" of future persecution, she must establish that the persecution cannot be avoided by relocating within the country designated for removal. *Id.*

4

We need not decide whether Mejia-Restrepo's profession or employment status constituted a protected ground, because even if it could be construed as imputed political opinion or membership in a particular social group, there is substantial evidence in the administrative record to support the BIA's finding that Mejia-Restrepo failed to establish that she had been persecuted in the past based on her profession or imputed political opinion or that she had an objectively reasonable fear of being singled out for future persecution based on her profession or imputed political opinion. Mejia-Restrepo testified that, in 1992, she was amongst a team of oil workers held at gunpoint by the ELN for, at most, four hours, threatened with death, and called traitors for working for a foreign oil company. She provided a police report and testimony describing an incident from 1995, during which she was amongst a team of oil workers driving in cars that encountered armed members of the FARC who fired weapons over their heads, called them traitors for working for the oil company, and stole all of their belongings. The third episode Mejia-Restrepo described during her testimony occurred in 1999, when she drove past members of a paramilitary group disposing of the corpse of a local broadcaster along the side of the road. Subsequently, Mejia-Restrepo was approached by a stranger who told her not to speak about what she had seen. She also described receiving phone calls, beginning in 1999, from

5

individuals who threatened her and warned her not to report having seen the corpse.

We are not compelled by this evidence to conclude that Mejia-Restrepo was persecuted. Mejia-Restrepo described three incidents over the span of seven years, all committed by different subversive groups, and none of which resulted in any harm to her. This pattern of activity, or "a few isolated incidents of verbal harassment or intimidation," does not amount to persecution. *Sepulveda*, 401 F.3d at 1231. Although the 1992 incident may have been motivated by her employment status, it was a single episode of harassment that does not rise to the level of persecution. *Id.* Indeed, Mejia-Restrepo does not describe any further incident with the ELN in the eight years that she remained in the country following the 1992 incident. With regard to the 1995 and 1999 incidents, neither were motivated by Mejia-Restrepo's status as an employee for BP. A fair interpretation of the 1995 incident is that the armed guerillas intended to rob the occupants of cars on the highway, regardless of their identities or occupational statuses. Essentially, Mejia-Restrepo was in the wrong place at the wrong time and, while unfortunate, the robbery was not related to her employment status. Similarly, the acts of intimidation that Mejia-Restrepo faced in 1999 were likely the result of her observing the commission or concealment of a murder. Because substantial

6

evidence supports the BIA's ruling that Mejia-Restrepo failed to establish past persecution, the BIA correctly denied her a presumption of future persecution.

Mejia-Restrepo sought to demonstrate that she possessed a well-founded fear of future persecution should she be returned to Colombia. While a fear of the unstable country conditions in Colombia may be reasonable, and her individual fear may be genuine, the administrative record does not compel us to find that Mejia-Restrepo would be singled out for persecution on account of her profession if she returned to Colombia. *Sepulveda*, 401 F.3d at 1231. Mejia-Restrepo's claim of a well-founded fear of future persecution is belied by her safe return to Colombia, from April until September 2000, after she spent six months in the United States following the last of the alleged acts of persecution, and the fact that her mother has remained in Colombia unharmed. Thus, substantial evidence supports the BIA's conclusion that Mejia-Restrepo failed to demonstrate a well-founded fear of future persecution.

Mejia-Restrepo also argues that she was deprived of due process because the IJ did not allow her to develop fully her testimony at the second hearing by limiting her testimony to new evidence that was not presented at a previous hearing, where she was represented by ineffective counsel. Also, Mejia-Restrepo alleges that the IJ was biased, and that this bias rose to the level of a due process violation.

"We review constitutional challenges *de novo*." *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341 (11th Cir. 2003). Aliens are entitled to due process in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449 (1993). Due process requires that an alien have the right to a hearing before an IJ, the right to notice of the hearing, and an opportunity to be heard. *Id.* at 309, 113 S. Ct. 1450-51; *Sebastian-Soler v. U.S. Att'y Gen.*, 409 F.3d 1280, 1287 n.14 (11th Cir. 2005). The IJ is granted the authority to "receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.1(c). Although an IJ is provided with discretion to run the proceedings, an alien must be provided with "a full and fair hearing." *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987). "In order to establish a due process violation, an alien must show that he or she was deprived of liberty without due process of law . . . and that the asserted error caused h[er] substantial prejudice." *Garcia v. U.S. Att'y Gen.*, 329 F.3d 1217, 1222 (11th Cir. 2003) (citations omitted). The Supreme Court has held that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, . . . sometimes display," and do not "establish[ ] bias or partiality." *United States v. Liteky*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157 (1994).

The administrative record demonstrates that Mejia-Restrepo received a "full and fair" hearing before the IJ. *Ibrahim*, 821 F.2d at 1550. The BIA determined that since Mejia-Restrepo was represented by ineffective counsel during her first hearing, she would be "provided the opportunity to present further evidence and testimony regarding" her application for asylum, withholding of removal, and protection under the CAT. Consistent with the BIA's mandate, and the IJ's authority to regulate hearings, the IJ limited the remanded proceedings to evidence not previously presented. This included the testimony of Mejia-Restrepo's daughter, a more complete copy of the police report regarding the 1995 incident that had been described at the initial hearing, and testimony about the 1992 incident that Mejia-Restrepo had omitted from her prior testimony. Therefore, Mejia-Restrepo had a full and fair hearing because she was provided an opportunity to present fully her claim.

The record indicates that the IJ showed impatience with Mejia-Restrepo and her counsel for repeating evidence that had been presented at the initial hearing, but the IJ's actions were consistent with her authority to "otherwise regulate the course of the hearing," 8 C.F.R. § 1240.1(c). Moreover, as the BIA noted, the IJ's actions were "within the bounds of what imperfect men and women . . . sometimes display." *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157. Accordingly, we

9

conclude that Mejia-Restrepo was not deprived of liberty without the due process of law.

Finally, even if she were to demonstrate that she was deprived of due process at her second hearing, the record does not support a finding that any error caused Mejia-Restrepo substantial prejudice. As explained above, the harassment Mejia-Restrepo alleged was insufficient to show that she suffered past prejudice or would be singled out to suffer future prejudice as a result of her imputed political opinion or membership in a particular social group.

Accordingly, for the above-stated reasons, we deny Mejia-Restrepo's petition for review.

**PETITION DENIED.**