[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2011
JOHN LEY
CLERK

No. 10-13998
Non-Argument Calendar
_____

Agency No. A088-685-712

SITA DEVI THAPA,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 27, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Sita Devi Thapa, a citizen of Nepal, came to the United States on a tourist visa and within a year of her arrival had applied for asylum and withholding of removal based on her alleged persecution by Nepalese Maoist guerrillas. Thapa was denied relief and now petitions for review of the Board of Immigration Appeals' (BIA's) decision denying her application for asylum and petition for withholding of removal under the Immigration and Nationality Act (INA).

On appeal Thapa argues that the BIA erred in affirming the Immigration Judge's (IJ's) adverse-credibility determination, which was the basis for denying her relief. Thapa also argues that the IJ's conduct at the hearing denied her due process.[1] We deny Thapa's petition in part as well as to her due process argument and as to her argument that the BIA's adverse-credibility finding was not supported by substantial evidence. But because we conclude that the BIA failed to consider corroborating evidence and denied relief based solely on its adverse-credibility determination, we also grant Thapa's petition in part and remand.

I.

---

[1] Thapa also argues that the IJ's determination that she was not entitled to asylum or withholding of removal because she had failed to establish past persecution was not supported by substantial evidence. But the BIA did not address the IJ's past-persecution finding in its order, nor did it adopt the IJ's finding. Consequently we do not consider Thapa's argument on this point. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008).

Where the BIA issues its own opinion, as is the case here, we review only that opinion. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008). In the event that the BIA expressly adopts the IJ's decision, we will also review the IJ's decision to that extent. *Id.* We review any legal conclusions made by the BIA *de novo*, but we may not reject its factual findings unless they are so unsupported by evidence that the record compels it. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350–51 (11th Cir. 2009). We review constitutional challenges *de novo*. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

## II.

We first address Thapa's due-process challenge. In the context of removal proceedings, due process is satisfied when an alien is given notice and a right to be heard before her removal. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009). We have also said that an alien's removal hearing must be full and fair. *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987).

Thapa argues that the IJ conducted her removal hearing in an unnecessarily antagonistic and insensitive manner. As a result, Thapa contends, her removal hearing was turned into a game of "gotcha," and the IJ's credibility determination is itself not credible.

3

An IJ may "interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. §1229a(b)(1). Most of the questions and comments that Thapa complains about were instances where the IJ was attempting to get Thapa to focus her answer or respond to a question. We have approved similar efforts in judicial context, and we can discern no reason why due process would require that we disapprove of them here. *See Moore v. United States*, 598 U.S. 439, 442 (5th Cir. 1979).[2]

Thapa also argues that the IJ was sarcastic when he asked her whether her parents "had been killed yet." Although in any case the IJ might have phrased the question somewhat more delicately, in the context of the proceeding it is not clear that he was being sarcastic. Indeed, Thapa's testimony leading up to the IJ's question was about death threats that had been made to her parents. Accordingly, we find no due-process violation.

### III.

The INA allows the Attorney General to grant asylum to any refugee, that is, someone who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion,

---

[2] *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) ("[T]he decisions of the United States Court of Appeals for the [former] Fifth Circuit . . . shall be binding as precedent in the Eleventh Circuit . . . .").

nationality, membership in a particular social group, or political opinion."

8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A). Similarly, to qualify for withholding of removal, an alien must establish that upon return to her home country it is more likely than not that her life or freedom would be threatened because of her race, religion, nationality, membership in a particular social group, or political opinion. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005). If an alien cannot meet the standard for asylum, she is usually unable to meet the "more stringent" standard for withholding of removal. *Id.* at 1232–33. An alien's own testimony, if credible, may be by itself enough to establish past persecution. *Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007). It is, however, up to the trier of fact to determine whether an alien is credible. 8 U.S.C. § 1158. And indeed in some cases, like here, the alien may be found to be incredible.

To overturn an adverse-credibility finding, a petitioner must show that the BIA's finding "was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). Under this test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1286. And, like any other factual finding, a credibility determination "may not be overturned unless the record compels it." *Id.* at 1287.

Here the BIA gave specific and cogent reasons for its adverse-credibility determination by identifying discrepancies between Thapa's testimony before the IJ, her application, and her interview with the asylum officer.[3] And those discrepancies are more than sufficient evidence to support the BIA's finding. Even though Thapa's post-traumatic stress disorder could provide a reasonable, and even plausible, explanation for the discrepancies, it does not compel us to overturn the BIA's finding.

But although we affirm the BIA's adverse credibility finding, we conclude that it was not by itself a sufficient basis to deny relief. In the absence of corroborating evidence, an adverse-credibility finding can be sufficient to deny relief to an alien, *Mohammed*, 547 F.3d at 1345, but when an applicant produces

---

[3] The REAL ID Act, which applies to Thapa's claims, provides that:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). An alien's later testimony about facts not included in her asylum application can be considered an inconsistency in her statements. *See Mohammed*, 547 F.3d at 1345–46; *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255–56 (11th Cir. 2006).

6

corroborating evidence, the BIA must consider it too in deciding whether to grant relief. *Forgue*, 401 F.3d at1287.

Here the BIA denied relief based solely on its adverse-credibility finding. Had Thapa not provided any corroborating evidence that would have been sufficient to deny relief. But she did, so it wasn't. Accordingly, we grant her petition in part, vacate the BIA's opinion in part, and remand to the BIA so that it may consider whether she was entitled to relief in light of her corroborating evidence despite the BIA's adverse-credibility determination.

**DENIED in part, GRANTED in part, REMANDED.**